Evelyn V. Keyes, Justice
Levco Construction, Inc. ("Levco") sued Cleveland Construction, Inc. ("CCI") and Whole Foods Market Rocky Mountain/Southwest *623 L.P. ("Whole Foods") for claims arising out of its role as a subcontractor on a construction project to build a Whole Foods store in Houston, Texas ("the Project"). CCI and Whole Foods also asserted claims against each other and Levco. Following a bench trial, the trial court determined that Whole Foods owed CCI, the general contractor, breach of contract damages of $465,809.57 plus interest and attorney's fees. The trial court further determined that CCI owed $190,250.77 plus interest and costs to intervenor Insurors Indemnity Co. ("Insurors"), the issuer of Levco's surety bond for the Project, for work that Levco performed.
Levco and Whole Foods appealed. Levco argues that: (1) the trial court erred in failing to award any damages to Levco despite its "liability findings of common law fraud against [Whole Foods]"; and (2) the Construction Contract between Whole Foods and CCI "does not eliminate [Levco's] right to recover from [Whole Foods] because of the trial court's finding of common law fraud against [Whole Foods]." Whole Foods argues that (1) the trial court erred in concluding that Whole Foods breached the parties' contract governing the Project; (2) the trial court erred in concluding that CCI did not breach the contract or that CCI's breach was excused by Whole Foods' prior material breach; (3) the trial court erred in concluding that neither CCI nor Levco owed Whole Foods indemnity under the contract; (4) "CCI's claim for action on the bond fails as a matter of law"; and (5) this Court should order Levco to reimburse Whole Foods for half of the costs incurred by Whole Foods in obtaining the appellate record.
We affirm.
Background
The trial court's findings of fact were largely undisputed regarding the general background; accordingly, the following facts reflect the facts of the case as found by the trial court and supported by the evidence presented at trial.
A. Whole Foods Leases Land and Plans to Construct a Store
In April 2008, Whole Foods, acting through an affiliate company, entered into a ground lease with Finger-FFC WPM, Ltd., for a plot of land located at 701 Waugh Drive, Houston, Texas, on which Whole Foods intended to build a store. The effective date of the lease was April 30, 2008, with construction to begin in 2010. Unable to meet the deadline of the initial ground lease, Whole Foods entered into a second amendment of the lease, dated July 9, 2009. As part of the amendment, Whole Foods' affiliate entity promised Whole Foods a $7 million bonus as a tenant improvement allowance provided that the store was completed by June 30, 2011.
Whole Foods entered into an architectural services contract with Stone Soup 6, f/k/a Beckham Design Group Architects ("Stone Soup"), for the purpose of developing plans and specifications for the Project, and, in August 2009, Stone Soup prepared a "bid set" of plans that were ultimately used as the "for construction" drawings on the Project.
B. Whole Foods, CCI, and Levco Engage in the Bidding Process as Construction of the Project is Poised to Begin
In March 2010, Whole Foods contacted CCI to solicit a bid for work as the general contractor on the project. Whole Foods provided CCI with the bid set of plans from Stone Soup on March 25, 2010, and instructed it to submit a completed bid by March 30, 2010. This accelerated bidding process allowed Whole Foods to meet the *624 deadlines for commencing construction on the Project set out in the amended lease.
CCI then entered into discussions with various subcontractors, including Levco, and assembled its bid. Levco submitted a bid to CCI for the site, concrete, and utility portions of the Project for a total cost of $711,514. CCI incorporated that bid and others into its own bid for the Project, and it presented a total bid of $5,150,000 for the Project to Whole Foods. Whole Foods awarded the work to CCI.
In April 2010, prior to executing a contract with CCI, Whole Foods issued a Notice to Proceed to CCI, instructing it to begin working on the Project. However, on April 8, 2010, a meeting was held between Whole Foods and CCI to identify issues on the Project. Whole Foods had failed to obtain necessary easements and permits, and the subcontractors needed information and participation on behalf of the architects in order to move forward. CCI was unable to get the necessary information from Whole Foods, but it nevertheless adjusted construction plans so that the Project could move forward.
C. The Parties Enter into Their Respective Agreements
In May 2010, Whole Foods and CCI entered into a form agreement promulgated by the American Institute of Architects, which set out the specific terms and general conditions for the construction of the Project ("Construction Contract"). CCI agreed to complete site work and build the shell construction for the store of approximately 10,413 square feet. The original contract duration was to be twenty-two weeks, with September 2010 as the completion date. The Construction Contract set out detailed provisions for CCI to submit payment applications. It also required conditional and, under specific circumstances, unconditional lien waivers and other documents in order for CCI to receive payment. CCI agreed to pay its own subcontractors promptly, and the parties agreed to a retainage amount of 10% of the progress payments.
The parties also agreed that CCI's performance "shall be required only to the extent consistent with the Contract Documents" and that CCI "shall not be responsible for the adequacy of the performance and design criteria specified in the Contract Documents," as those documents were to be provided by Whole Foods through its architect. Finally, the contract provided for final payment, including the retainage amounts, upon completion of the Project. That provision contemplated that the final payments would then be used to pay off any remaining amounts owing to subcontractors and materialmen, and it provided a remedy in the event that a subcontractor refused to furnish a release or waiver so that a "lien remains unsatisfied after payments are made."[1]
While it was negotiating with Whole Foods, but prior to executing the Construction Contract, CCI also entered into a contract with Levco as a subcontractor ("Subcontractor Agreement"). The Subcontractor Agreement expressly incorporated the Construction Contract-which had not yet been executed by CCI and Whole Foods at the time CCI and Levco signed the Subcontractor Agreement-by reference, and it obligated Levco to perform its work in accordance with CCI's schedule as set out in its agreement with Whole Foods. Levco's work on the Project was originally *625 set to begin in May 2010 and to be completed in September 2010.
The Subcontractor Agreement conditioned payment from CCI to Levco upon CCI's first having received payment from Whole Foods. The Subcontractor Agreement further required that Levco provide certain documents with its pay applications, such as lien waivers for itself and its own subcontractors, in order to be entitled to payment. Finally, the Subcontractor Agreement required Levco to obtain a 100% payment and performance bond for the total subcontract amount, and the bond was issued by Insurors.
D. Construction on the Project Experiences Almost Immediate Delays that Affect Levco and CCI's Other Subcontractors
Work proceeded on the Project, and, on June 1, 2010, Levco submitted its first payment application to CCI for $123,514 for work completed in May 2010. This pay application was accompanied by the documents required by the Subcontractor Agreement. Accordingly, after deducting 10% for retainage, CCI issued payment to Levco less than thirty days later for $111,162.60.
Delays began to affect the Project almost immediately. At a June 8, 2010 meeting, which also included the architect, CCI notified Whole Foods of numerous issues that Whole Foods needed to resolve. These issues included the need to obtain City of Houston water and fire line account numbers as part of the permitting process and the need to execute a warranty deed with Centerpoint Energy so that Centerpoint could make a permanent provision of power to the site. Whole Foods failed to address these issues in a timely manner, thereby delaying the construction work.
On June 30, 2010, Levco submitted another payment application for work completed in June. CCI made a timely payment for this work.
In July 2010, the Project encountered even more delays. Some of the delays were due to weather. Others were related to problems with the building plans and specifications or with the "Architect's Supplemental Instructions" ("ASIs") that were issued by Stone Soup in an attempt to correct or clarify existing plans. Some of the problems-caused by changes in the design of the structural steel and solar panels initiated by Whole Foods and its architects-affected what CCI referred to as the "critical path" of steps that were necessary so that the Project could reach final completion on time. CCI submitted various change orders to Whole Foods to address the additional costs and delays associated with the Project.
The Project subsequently encountered additional delays in the installation of water lines, and Whole Foods agreed to further change orders to address additional costs and delays.
E. Levco Falls Behind Paying its Own Subcontractors, CCI Terminates the Subcontractor Agreement, and Insurors Steps in Under the Terms of the Bond
As the Project experienced delays, Levco fell behind in paying its subcontractors. At the end of July 2010, one of Levco's subcontractors, WM Trucking, notified CCI of its intent to place a lien on the Project for work it had completed in May 2010, despite CCI's having already paid Levco's May 2010 payment application. CCI discovered that Levco had failed to list WM Trucking on its affidavits detailing the names of its subcontractors and the amounts they were owed when it submitted its pay applications.
*626 In August 2010, several of Levco's subcontractors whom Levco had failed to pay again notified CCI of their intent to place liens on the Project, despite the fact that CCI had already paid Levco for this work. CCI notified Levco that it had breached the Subcontractor Agreement by failing to mitigate its delays in installing grade beam foundations, and CCI likewise furnished notice to Insurors, Levco's surety, that Levco was failing to perform under the Subcontractor Agreement.
Levco submitted its third payment application on August 16, 2010, requesting payment of $78,579.50, after deduction of the retainage amount, as the amount due for the progress of work actually performed. However, the accompanying affidavit and documents demonstrated that Levco owed its subcontractors and vendors $146,125 for work performed through July 31, 2010. Levco also failed to provide the lien waivers from its suppliers and subcontractors that were required under the terms of the Subcontractor Agreement with its payment application. CCI notified Levco and Insurors that Levco was required to provide the necessary waivers to be entitled to payment under the terms of the Subcontractor Agreement. When Levco failed to provide the waivers, CCI issued payment directly to the subcontractors in the amount of $78,579.50.
As required by the terms of Levco's payment bond issued by Insurors, CCI notified Insurors regarding the notices of liens it was receiving from Levco's subcontractors. CCI informed Insurors that Levco had failed to provide lien waivers and had failed to maintain its schedule by not meeting the concrete pouring deadline.
This pattern continued from August through October 2010, with Levco submitting with its pay applications affidavits that failed to reflect all of the work of its subcontractors and failing to provide subcontractor lien waivers. In spite of CCI's notice to it, Insurors likewise failed to pay Levco's subcontractors under the terms of the payment bond.
In November 2010, CCI issued a final notice requesting that Levco submit a recovery schedule for its outstanding work. Insurors responded by offering to guarantee Levco's invoices with specific subcontractors and representing that Levco would meet the construction schedule. Due to delays caused by problems with the structural steel drawings, design of parking lot solar panel systems, Centerpoint's refusal to relocate a power pole, Whole Foods' inability to obtain a water easement, and the discovery of an unanticipated gas line, CCI notified Whole Foods and revised its construction schedule. CCI likewise worked with Levco to establish a schedule starting on November 29, 2010, for completing work that Levco was obligated to perform. However, Levco had fallen behind on its obligations again by December 1, 2010. Furthermore, Levco had not yet provided CCI with the necessary lien releases.
On January 10, 2011, CCI notified Whole Foods of the numerous problems caused by the delays on the Project related to Whole Foods' failure to procure necessary permits.
On January 17, 2011, CCI sent a letter to Levco informing it that "CCI elects to terminate its [Subcontractor] Agreement with Levco Construction." CCI considered Levco's failure to adhere to the agreed-upon work schedule and its failure to remove its lower-tier subcontractors' intents to file liens to be breaches of the Subcontractor Agreement. It then made a demand upon Insurors to complete the Project under its performance bond. Insurors elected to have Levco complete the work, as was permitted under the terms of the bond, and on January 24, 2011, CCI
*627 agreed to Insurors' use of Levco to complete the remaining work pursuant to the terms of the performance and payment bond, which in turn incorporated the Subcontractor Agreement.
Also on January 24, 2011, CCI sent to Whole Foods additional written notice of the cause of many of the construction delays-such as Whole Foods' failure to obtain needed permits, easements, and corrected plans and specifications from the architect. Beginning in February 2011, the Project incurred even more critical path delays due to problems with permitting, redesign of various elements of the building, and utility easement issues that were under Whole Foods' control. CCI also continued to submit change orders related to the delays caused by Whole Foods.
Corporate supervisors with Whole Foods eventually received the notices of delay sent by CCI, and on April 7, 2011, Whole Foods appointed new personnel to oversee the Project. Whole Foods' managers and executives expressed disappointment at the previous Senior Project Manager's handling of the Project, and Whole Foods' Regional President, Mark Dixon, acknowledged that he had received numerous complaints about the Senior Project Manager's lack of communication.
F. Levco Files Suit and CCI Works to Complete the Project
On April 15, 2011, Levco filed suit against CCI and Whole Foods. Levco complained that various delays caused by Whole Foods resulted in its working on the Project for months beyond the original September 2010 deadline in the Subcontrator Agreement. In fact, Levco's work on the Project was still ongoing at the time it filed suit.
On May 13, 2011, Levco notified CCI and Whole Foods of its claim under Texas Property Code Chapter 53. Whole Foods characterized this claim as a "Fund-trapping Notice" and contended that it required Whole Foods to withhold any further payments to CCI. CCI, on the other hand, contended that this notice did not comply with the Property Code and, thus, was invalid.
On June 14, 2011, Levco finally issued the needed lien releases and waivers for the period of August 2010 to June 2011. CCI then released a payment of $348,175.94 directly to Insurors for work performed by Levco under the terms of the performance bond. According to the evidence presented at trial, the original Subcontractor Agreement amount plus the change orders issued on the Project and the final retainage, less the payments made to Levco or on its behalf, left a remaining balance owed to Levco by CCI of $190,250.77.[2] This amount was to be paid from the retainage that CCI was to receive from Whole Foods. Levco then released any claim against Whole Foods and CCI with respect to the contractual sums paid to it by CCI.
On June 15, 2011, Levco filed a Lien Affidavit and Claim against the Project alleging that it had an unpaid claim in the amount of $1,075,983.35. This lien claim did not reflect the $348,175.94 payment made by CCI to Insurors for Levco's work under the performance bond and Subcontractor Agreement.
On June 22, 2011, Stone Soup issued a certificate of substantial completion on the Project under the terms of the Construction *628 Contract. The Project was finally completed on June 24, 2011. Whole Foods accepted CCI's work, began occupying the premises, and collected its $7 million bonus under the terms of the amended lease for the premises.
In July 2011, two subcontractors filed liens on the Project for unpaid amounts.
On July 14, 2011, Whole Foods approved CCI's closeout documents, and the closeout documents required under the Construction Contract were sent to Whole Foods via FedEx on September 2, 2011 and accepted by Whole Foods' project manager.
On July 15, 2011, CCI issued to Whole Foods its final pay application for its last progress payment in the amount of $13,094.63 and its application for the release of the contractual retainage amount of $593,735.20. On August 26, 2011, CCI submitted a pay application for an outstanding change order in the amount of $36,251.60.
On September 29, 2011, Whole Foods paid the final progress payment of $13,094.63. However, Whole Foods refused to release the final payments of the retainage and outstanding change order. CCI offered to provide conditional lien releases and waivers in exchange for Whole Foods' agreement to release the final payment, and CCI also offered to bond around or otherwise discharge Levco's lien on the Project in exchange for Whole Foods' commitment to make the final payment on the Project. CCI also, on at least one occasion, asked Whole Foods to release some of the retainage amounts directly to its subcontractors. Whole Foods nevertheless continued to withhold the final payment.
On October 10, 2011, CCI filed its own lien affidavit with the Harris County Clerk, alleging a claim for $629,986.80. Beginning in October, several more subcontractors filed liens. Whole Foods' agreement with the lessor, Finger-FFC WPM, Ltd., required Whole Foods to obtain an indemnity bond to address the liability created by these liens.
On November 21, 2011, Whole Foods notified CCI by letter that the Construction Contract required CCI to "keep the Project free from liens arising out of CCI's Work," and stated that "[a]s of the date of this letter, it appears that several lien filings by subcontractors and/or suppliers to CCI and/or one or more of its subcontractors on the Project remain in existence, thereby clouding title to the property." The letter acknowledged that CCI had resolved some of the lien filings, and it demanded that CCI promptly remove and discharge the remaining liens or furnish bonds covering them in accordance with the Construction Contract. Whole Foods also requested indemnity.
On November 28, 2011, CCI responded to Whole Foods' requests, stating that it had been attempting to work with Whole Foods to address its concerns but that Whole Foods "failed to respond to any of those requests" until it sent the two letters on November 21. CCI provided Whole Foods with lien releases for most of the subcontractors listed in the November 21, 2011 letter. Regarding the remaining liens, CCI informed Whole Foods that those liens related to the withheld change order payment application or to the withheld retainage and that it would pay the subcontractors and secure lien releases once it received payment from Whole Foods. The letter stated, "As you are aware, CCI has a paid-if-paid provision in its contracts; therefore, once [Whole Foods] pays CCI, it will pay its lower tier subcontractors and secure all appropriate releases." It also stated, "Additionally, [CCI is] unaware of any complaints by [Whole Foods] that CCI has failed to meet any of its contractual *629 obligations other than these obligations for payment due under the retainage amounts."
This letter further stated that CCI had previously sent Whole Foods a list of retainage amounts owed to CCI's subcontractors and had requested that Whole Foods make those payments "either directly, through joint checks, or to CCI." CCI provided copies of the emails containing those requests and informed Whole Foods that it had not responded to any of those emails. Finally, CCI asserted a claim for indemnity against Whole Foods, asserting that Levco's liens and claims "relate to issues beyond the control of CCI and relate solely to issues within the control of [Whole Foods]" such as "damages related to faulty drawings and delays from [Whole Foods] in responding to Levco's change order requests." The letter once again stated that, upon Whole Foods' payment of the change orders and retainage that Whole Foods was improperly withholding, CCI "will immediately pay its subcontractors and secure all necessary releases and waivers."
Whole Foods did, in 2014, issue some payments directly to CCI's subcontractors, reducing the amount owed to CCI under the Construction Contract to $465,809.57. However, Whole Foods never paid the remainder of the final change order payment application or the retainage amounts, and the parties proceeded with litigation.
G. Trial Court Conducts a Bench Trial
The trial court held a bench trial beginning in October 2014.
1. Levco's claims at trial
At trial, Levco asserted only its claim against Whole Foods for fraud based on Whole Foods' failure to provide proper construction documents during the bidding process, while nevertheless forcing Levco to perform work without proper permits and despite defective designs and plans. Levco sought to establish that the delays caused by Whole Foods and Whole Foods' demand that Levco personnel be on site even when the construction plans were changing-thus preventing Levco from being able to staff other projects-put it out of business. Levco also claimed out-of-pocket losses because of Whole Foods' failure to disclose and remedy the incomplete and inaccurate plans and specifications for the Project. Levco asserted that these damages, including interest and attorney fees, totaled $2.2 million dollars and it presented expert testimony from its damages expert, Warren Cole. Levco also disputed the amounts of various change orders. However, Arnold Acker, Insurors' expert, opined that Levco was not justified in its claims related to the disputed change orders.
2. Insurors' claims at trial
Insurors, which had intervened in the suit to recover its losses under the contractual indemnity clause and a right to equitable subrogation provided for in its performance bond, recognized that its recovery was contingent upon Levco's recovery. It argued that it had a superior lien on any amounts that CCI owed to Levco and that CCI should be required to pay any such amounts directly to Insurors.[3]
3. CCI's claims at trial
Regarding Levco's claims, CCI asserted that the Subcontractor Agreement specified a procedure for Levco to make a claim to CCI regarding damages flowing from Whole Foods' delays. However, Levco had made no such claim to CCI in this regard. CCI also alleged that Levco had allowed liens to be filed on the property, had failed *630 to complete its work in a timely manner, and had failed to comply with the Subcontractor Agreement's notice and claim provisions. In addition, CCI argued that Insurors owed it contribution and indemnity for Levco's claims and that Insurors was not entitled to receive any amounts above and beyond the remaining unpaid balance of the Subcontractor Agreement.
CCI claimed that Whole Foods had breached the Construction Contract by withholding the final payment and the retainage fees, and it sought action on Whole Foods' indemnity bond. CCI also claimed that it did not owe Whole Foods any defense or indemnity obligations because Whole Foods could not show that CCI had breached the contract or had been negligent or that any alleged breach or negligence by CCI caused Levco's claims.
CCI sought to establish that the delays were caused by Whole Foods and provided the expert testimony of Bryan Byrd, who testified that the Project suffered 226 days of critical path delay ascribable to Whole Foods. Byrd also testified that, to a lesser extent, Levco was also responsible for some of the delays. Whole Foods' expert, Michael D'Onofrio, agreed with Byrd's estimation of the extent of the critical path delays, but he had not done any delay analysis to determine the cause of the delays. D'Onofrio testified that he could not ascribe any of the delay to CCI. And Whole Foods' personnel admitted that there were delays on the Project caused by Whole Foods, though it asserted that Levco had failed to make a proper claim under the relevant contractual provisions for damages from the delay.
CCI asserted that Whole Foods owed it $465,809.59 as amounts due under the terms of the Construction Contract for work it performed on the Project. It agreed that it would pay Levco and Insurors the remaining payment of $190,250.77 once CCI received its final payment from Whole Foods.
4. Whole Foods' claims at trial
Whole Foods contended that CCI was the breaching party, arguing that, among other failures, CCI had failed to pay subcontractors, had failed to keep the Project free from liens and claims, had failed to provide requested documents, and had refused to indemnify Whole Foods, in violation of the terms of the Construction Contract. Whole Foods also sought to enforce the indemnity provision of the Construction Contract against CCI-and Levco as CCI's subcontractor-and to invalidate CCI's and Levco's liens.
Mike Shaw, the project manager for Whole Foods, testified at trial. Significantly, he testified that he could not identify any critical path delays that had been caused by either CCI or Levco.
H. Trial Court's Judgment
The trial court rendered a final judgment on May 4, 2015. It ordered that CCI recover from Whole Foods $465,809.57 in actual damages, plus attorney's fees and pre- and post-judgment interest. In its findings of fact and conclusions of law, the trial court stated that this judgment was based on a conclusion that Whole Foods breached the Construction Contract by withholding final payment.
The trial court also ordered that Insurors recover from CCI $190,250.77 plus costs and pre- and post-judgment interest. In its findings of fact and conclusions of law, the trial court found that this amount was still due and owing to Insurors for work Levco performed on the Project, to be paid out of the retainage payment that Whole Foods owed to CCI.
The trial court denied any other relief. It determined that Levco was not entitled to any further relief on its claims against *631 Whole Foods. And it determined that Whole Foods was not entitled to any relief on its breach of contract or indemnity claims. The trial court explained in its findings of fact and conclusions of law that, to the extent that CCI's conduct constituted a breach, the breach was excused by Whole Foods' withholding of the final payments. The trial court also determined that Whole Foods had failed to establish that any of the claims against it had arisen from or had been caused by any negligence or breach by CCI.
Levco and Whole Foods both appealed.
I. Levco's Issues on Appeal
Levco alleged at trial that Whole Foods committed fraud based on its failure to disclose during the bidding process that the plans and specifications for the Project were not complete.[4] The trial court found that Levco had established a claim of common law fraud against Whole Foods, but it ultimately determined that Levco was not entitled to any damages from Whole Foods on that claim.
In two issues on appeal, Levco argues that: (1) the trial court erred in failing to award any damages to Levco despite its "liability findings of common law fraud" against Whole Foods; and (2) the Construction Contract between Whole Foods and CCI "does not eliminate [Levco's] right to recover from [Whole Foods] because of the trial court's finding of common law fraud against [Whole Foods]."
A. Standard of Review
In an appeal from a judgment after a bench trial, we accord the trial court's findings of fact the same weight as a jury's verdict. Milton M. Cooke Co. v. First Bank & Trust , 290 S.W.3d 297, 302 (Tex. App.-Houston [1st Dist.] 2009, no pet.) ; see Brown v. Brown , 236 S.W.3d 343, 347 (Tex. App.-Houston [1st Dist.] 2007, no pet.). Unchallenged findings of fact are binding on an appellate court, unless the contrary is established as a matter of law or there is no evidence to support the finding. Walker v. Anderson , 232 S.W.3d 899, 907 (Tex. App.-Dallas 2007, no pet.) ; see McGalliard v. Kuhlmann , 722 S.W.2d 694, 696 (Tex. 1986) ; Mullins v. Mullins , 202 S.W.3d 869, 874, 876-77 (Tex. App.-Dallas 2006, pet. denied). However, when an appellant challenges a trial court's findings of fact, an appellate court reviews those fact findings by the same standards it uses to review the sufficiency of the evidence to support a jury's findings. See Pulley v. Milberger , 198 S.W.3d 418, 426 (Tex. App.-Dallas 2006, pet. denied).
In a legal-sufficiency challenge, we consider whether the evidence at trial would enable a reasonable and fair-minded factfinder to reach the verdict under review. City of Keller v. Wilson , 168 S.W.3d 802, 827 (Tex. 2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." Id. We will only reverse the judgment if: (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. Id. at 810. The record contains more than a mere scintilla of evidence if reasonable minds could form differing conclusions about a vital fact's existence.
*632 King Ranch, Inc. v. Chapman , 118 S.W.3d 742, 751 (Tex. 2003). Conversely, the record is insufficient when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence. Id. ; Ford Motor Co. v. Ridgway , 135 S.W.3d 598, 601 (Tex. 2004).
In a factual-sufficiency challenge, we consider and weigh all the evidence, and can set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. Golden Eagle Archery, Inc. v. Jackson , 116 S.W.3d 757, 761-62 (Tex. 2003). We may not substitute our own judgment for that of the factfinder, even if the evidence would support a different result. Maritime Overseas Corp. v. Ellis , 971 S.W.2d 402, 407 (Tex. 1998). The amount of evidence necessary to affirm the factfinder's judgment is far less than that necessary to reverse its judgment. GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet , 61 S.W.3d 599, 616 (Tex. App.-Houston [14th Dist.] 2001, pet. denied).
We review conclusions of law by the trial court de novo and will uphold them if the judgment can be sustained on any legal theory supported by the evidence. Brown , 236 S.W.3d at 348. The trial court's conclusions of law are not subject to challenge for lack of factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. Id.
B. Relevant Contract Provisions
Levco's work on the Project and its relationship with Whole Foods was governed by the Subcontractor Agreement between CCI and Levco, which provided that CCI had entered into the Construction Contract with Whole Foods for the Project. It provided that "[t]he Construction Contract is incorporated herein by reference and made a part of this Agreement" and that the Construction Contract "includes the signed agreement between CCI and [Whole Foods] and all documents forming part of that contract (collectively the 'Contract Documents')." The Subcontractor Agreement further provided that "[t]he Contract Documents and Subcontract are intended to be complimentary so that anything required in one shall be of like effect as if required by both" and that "Subcontractor [Levco] is bound to CCI by all terms and conditions of this Subcontract and, except as otherwise provided herein, by all terms and conditions of the Contract Documents, which are incorporated herein and are an integral part of this Subcontract."
The Construction Contract contained a disclaimer of any warranty regarding the accuracy of the "Contract Documents," which the Contract defined as including Project drawings and specifications:
Anything to the contrary in the Contract Documents notwithstanding, and to the fullest extent permitted by law, [Whole Foods] disclaims any and all implied or express warranties regarding: (i) the accuracy, sufficiency, or completeness of the Contract Documents; (ii) the constructability of the improvements depicted in the Contract Documents; (iii) the data, opinions or recommendations expressed in or implied by any report, survey, analysis or investigation provided to Contractor relating to legal limits, geologic or hydrologic conditions, hazardous substances, surface and subsurface obstructions; and (iv) the conditions of existing improvements, including without limitation the landlord's work and the premises. Any such deficiency or condition shall not create a cause of action against [Whole Foods] for breach of express or implied warranty, *633 misrepresentation, or fraud. If Contractor believes that it is entitled to extra time or compensation as a result of errors in the Contract Documents, reports, surveys, analyses, investigations, or concealed field conditions, the Contractor shall, as a condition precedent to seeking redress in any court, follow the claim procedures set forth in Article 15 of these General Conditions.
(Emphasis added; all-capital lettering altered for ease of reading).
Article 15 set out detailed procedures for addressing claims and disputes between Whole Foods and its contractors. It required claims to "be initiated by written notice to the other party and to the Initial Decision Maker with a copy sent to the Architect," and it provided that "[c]laims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes, or should reasonably have recognized, the condition giving rise to the Claim." Article 15 provided that "[t]imely submission of such written notice and compliance with other provisions of this Article 15 is a condition precedent to any obligation of [Whole Foods] to adjust the Contract Time, Contract Sum, General Conditions Amount, or otherwise compensate Contractor for any condition or occurrence giving rise to a Claim," and it provided that failure to comply with Article 15's requirements "shall be deemed waiver of any right by contractor to make any claim or obtain any recovery relating to or arising from such condition or occurrence." Article 15 also set out specific procedures for making a claim for additional costs or the need for additional time.
Like the Construction Contract, the Subcontractor Agreement set out procedures for addressing changes in the work as a result of unforeseen circumstances or for seeking extensions of time to complete the work. It specifically stated,
In the event Subcontractor shall incur damages and/or additional costs as a result of any act, or failure to act by the Owner [Whole Foods] or any of their representatives and/or any of the Owner's other contractors and their subcontractors, Subcontractor shall provide CCI any and all notices in the form and manner required by the Contract Documents with respect to claims for damages and additional costs against Owner.
It also stated, "In no event shall Subcontractor be entitled to damages and/or additional costs as the result of any act or failure to act by Owner unless the Owner is liable for and pays the same to CCI."
C. Relevant Findings of Fact and Conclusions of Law
Relevant to Levco's claims against Whole Foods, the trial court found:
Whole Foods failed to timely address many issues which were causing delays to the Project. CCI issued correspondence advising Levco that if Levco had been damaged due to Owner delays, then Levco had to submit a claim in accordance with and pursuant to the Subcontract. Levco never submitted such a claim.
Thus, regarding Levco's claims, the trial court found that "Whole Foods' bid invitation and submission period constituted a waiver of the requirement for CCI and its subcontractors to personally visit and observe the site under which the work was to be performed." However, the trial court also found that "self-caused delays or delays caused by or through Whole Foods were the cause of all the delays on the Project complained of by Levco."
The trial court acknowledged Levco's fraud claim in its findings of fact, stating:
*634 Levco asserted fraud claims against Whole Foods regarding representations that the plans and drawings submitted for bid were accurate and construction-ready. The bid-set drawings were approved by Whole Foods' architect to be used as the "for construction" set and as such constituted representations to Levco that the drawings were accurate and construction-ready and that Levco should act on those representations. However, these representations turned out to be false. Thus, Whole Foods and/or its architect made the representation of the drawings as being accurate recklessly and Levco relied on those representations to their detriment. Consequently, Levco is able to establish all the elements of common-law fraud against Whole Foods with regard to the accuracy and sufficiency of the Project plans and specifications.
In spite of this finding, the trial court failed to award Levco any damages from Whole Foods. Rather, the final judgment awarded Levco's surety, Insurors, $190,250.77 as the final amount it was due under the Subcontractor Agreement with CCI. This was based on the trial court's findings that, following Levco's issuance of the required lien releases and waivers, CCI paid $348,175.95 for Levco's work on the project directly to Insurors, the holder of Levco's surety bond, in addition to the sums that CCI had paid directly to Levco for pay applications submitted to CCI on June 1, 2010, and June 30, 2010, and to Levco's own subcontractors in September 2010. The trial court found:
Based on the original Subcontract amount of $711,514.00 and after allowing for change orders issued on the Project, final retainage, and deducting all payments made to Levco or for its benefit (including subcontractor retainage), Levco and/or Insurors is owed a balance of $190,250.77 out of the retainage that CCI is owed from Whole Foods. This number reflects a $104,903.26 net increase in the Subcontract sum due to change orders, and a deduction of $626,166.49 for prior payments made to Levco or for its benefit, including payments made directly to Levco's subcontractors.
Regarding evidence of Levco's damages, the trial court found:
At the time of trial Levco provided no testimony to support any claim of unpaid or unapproved change order requests by Levco. Further, Levco's damages expert, Warren Cole, failed to account for the fact that many of the change orders purportedly in dispute by Levco were previously agreed to by Levco. Moreover, Mr. Cole failed to address Insurors' expert, Mr. Arnold Acker's, contention that Levco was not justified in its claims related to the disputed change orders. Mr. Cole's damage model calculations also assumed overhead and profit well in excess of the percentage of overhead and profit Levco originally used to bid the project. Additionally, Mr. Cole's analysis failed to account for losses and overhead ascribable to Levco's other projects. Also, the undisputed testimony adduced at trial showed that Levco was only owed a balance of $190,250.77 out of the retainage that CCI is owed from Whole Foods. Most importantly, at trial, Levco failed to produce any evidence that it had properly given CCI notice, under the Subcontract, of any claim Levco had against Whole Foods for delay damages.
D. The Contracts Bar Levco's Recovery on its Fraud Claim against Whole Foods
On appeal, Levco argues that the trial court erred in failing to award it *635 damages from Whole Foods on its fraud claim. Whole Foods argues, in part, that the governing contracts-the Construction Contract and the Subcontractor Agreement-bar Levco from recovering on its fraud claim. We agree with Whole Foods.
The economic loss rule serves to limit recovery in negligence and product liability cases where the damages relate only to the subject matter of a contract. See LAN/STV v. Martin K. Eby Const. Co., Inc. , 435 S.W.3d 234, 238-45 (Tex. 2014) ; Sharyland Water Supply Corp. v. City of Alton , 354 S.W.3d 407, 415-18 (Tex. 2011). In general, the rule "precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." Chapman Custom Homes v. Dallas Plumbing , 445 S.W.3d 716, 718-19 (Tex. 2014) (per curiam) (citing LAN/STV , 435 S.W.3d at 243 ). In deciding whether the economic loss rule applies in this case, we examine the source of the defendant's duty and the nature of the claimed injury. El Paso Marketing, L.P. v. Wolf Hollow I, L.P. , 383 S.W.3d 138, 143 (Tex. 2012) ; Clark v. PFPP Ltd. P'ship , 455 S.W.3d 283, 288 (Tex. App.-Dallas 2015, no pet.).
Here, the source of Whole Foods' duty to provide construction documents to Levco flowed exclusively from Whole Foods' contractual relationship with CCI and with CCI's subcontractors like Levco. The Construction Contract, which was expressly incorporated into Levco's Subcontractor Agreement with CCI, identified the "Contract Documents" as including Project drawings and specifications-the same documents that Levco complained of in its fraud claim. The Construction Contract expressly disclaimed "any and all implied or express warranties regarding ... the accuracy, sufficiency, or completeness of the Contract Documents," and it provided that "[a]ny ... deficiency [in the Contract Documents] or condition [of the premises] shall not create a cause of action against [Whole Foods] for breach of express or implied warranty, misrepresentation, or fraud." Rather, it provided a mechanism for seeking "extra time or compensation as a result of errors in the Contract Documents, reports, surveys, analyses, investigations, or concealed field conditions." This mechanism required, among other things, timely written notice.
The Subcontractor Agreement between CCI and Levco likewise provided,
In the event Subcontractor shall incur damages and/or additional costs as a result of any act, or failure to act by the Owner [Whole Foods] or any of their representatives and/or any of the Owner's other contractors and their subcontractors, Subcontractor shall provide CCI any and all notices in the form and manner required by the Contract Documents with respect to claims for damages and additional costs against Owner.
It also stated, "In no event shall Subcontractor be entitled to damages and/or additional costs as the result of any act or failure to act by Owner unless the Owner is liable for and pays the same to CCI."
Thus, Levco's claim seeking to hold Whole Foods liable for misrepresentations or inaccuracies in its Contract Documents is essentially a complaint that Whole Foods violated these specific contractual obligations to CCI and to Levco as CCI's subcontractor. The reasonableness of Whole Foods' actions here cannot be evaluated apart from the parties' agreements. Levco's involvement in the Project was entirely governed by its Subcontractor Agreement with CCI, which in turn incorporated CCI's Construction Contract with Whole Foods. The subsequent actions of Whole Foods' providing Contract Documents to Levco and Levco's completing *636 work based on the specifications in those documents was made pursuant to the parties' contractual agreements. The subject matter of the dispute-the accuracy of the Contract Documents and remedy for expenses or delays caused by deficiencies in the Contract Documents-is addressed in the parties' contracts. This indicates that Levco's claims are barred by the economic loss rule. See El Paso Marketing, L.P. , 383 S.W.3d at 142-43 ("Tort obligations are in general obligations that are imposed by law-apart from and independent of promises made and therefore apart from the manifested intention of the parties-to avoid injury to others."). The nature of Levco's alleged injury also indicates that the claim sounds in contract. See Clark , 455 S.W.3d at 289. Levco sought to recover damages that it incurred in performing its obligations under its Subcontractor Agreement with CCI. Thus, its alleged damages likewise flow from the contractual relationships among the parties here, and those contracts provided a method for addressing increased expenses or performance delays causes by errors or inaccuracies in the Contract Documents.
The fact that Levco pled this claim as a common-law fraud cause of action is immaterial here. In determining whether Levco is precluded from recovering in tort for losses resulting from Whole Foods' failure to perform under the contract and whether Levco's harm consists of "the economic loss of a contractual expectancy," courts look to the source of a defendant's duty and the nature of the claimed injury and are not bound by a plaintiff's own characterization of its cause of action. See Chapman Custom Homes , 445 S.W.3d at 718-19 ; El Paso Mktg. , 383 S.W.3d at 143. Likewise, the trial court's finding that Levco "is able to establish all elements of common-law fraud against Whole Foods" does not change the underlying nature of the dispute as one sounding in contract and is irrelevant in light of the trial court's determination that Levco failed to establish the right to any recovery against Whole Foods under the terms of the parties' contracts.
Evaluating Levco's claim against Whole Foods in light of its contractual rights and obligations, the trial court found that, although Levco "is able to establish all elements of common-law fraud against Whole Foods with regard to the accuracy and sufficiency of the Project plans and specifications," CCI had advised Levco that if it had been damaged due to Whole Foods' delays in correcting the construction documents, it was required to submit a claim in accordance with the contractual provisions. The trial court found that "Levco never submitted such a claim." The trial court found that Levco was entitled to $190,250.77 out of the retainage that Whole Foods owed CCI under the Construction Contract, which included "a $104,903.26 net increase in the Subcontract sum due to change orders, and a deduction of $626,166.49 for prior payments made [by CCI] to Levco or for its benefit, including payments made directly to Levco's subcontractors." The trial court also found that Levco otherwise failed to produce evidence of any unpaid or unapproved change order requests submitted pursuant to the parties' contracts and that it failed to present "any evidence that it had properly given CCI notice, under the [Subcontractor Agreement], of any claim Levco had against Whole Foods for delay damages."
On appeal, Levco argues that the trial court's findings relevant to Levco's damages apply "only to CCI since Levco never submitted evidence or argument that it was entitled to any damages from CCI" and that the trial court "failed to address the proof of Appellant Levco's damages, which were never disputed by Whole Foods." Levco also argues that its damages *637 expert, Warren Cole, submitted a report indicating that Levco's out-of-pocket losses amounted to $2,147,221 "that was never rebutted by any witness called by Whole Foods or by argument from Whole Foods' counsel."
To the extent Levco argues that the trial court's findings fail to address Levco's claims against Whole Foods, we observe that in the absence of findings of fact and conclusions of law, we are to infer that the trial court made any findings of material fact necessary to support its judgment and may affirm on any legal theory consistent with the evidence. See Worford v. Stamper , 801 S.W.2d 108, 109 (Tex. 1990). Furthermore, Levco's arguments fail to attack the sufficiency of the trial court's findings that Levco did not make a proper claim for damages due to Whole Foods' delays in accordance with and pursuant to the Subcontract; that "self-caused delays" contributed to the delays that Levco complains of; that Levco "provided no testimony to support any claim of unpaid or unapproved change order requests"; that Cole "failed to account for the fact that many of the change orders purportedly in dispute by Levco were previously agreed to by Levco"; that another expert, Acker, contended "that Levco was not justified in its claims related to the disputed change orders"; and that Cole's analysis made unsupported assumptions regarding overhead and profit and "failed to account for losses and overhead ascribable to Levco's other projects." These unchallenged findings are supported by the evidence and are binding on this Court. See Walker , 232 S.W.3d at 907. Cole's expert report is likewise insufficient to outweigh the other evidence in the record-such as invoices and records from CCI reflecting the amount paid to or on behalf of Levco and the amount still owing to Levco for work performed under the Subcontractor Agreement.
We conclude that the trial court's findings that "the undisputed testimony adduced at trial showed that Levco was only owed a balance of $190,250.77 out of the retainage that CCI is owed from Whole Foods"-an amount that the trial court awarded Levco's surety in the final judgment-and that "Levco failed to produce any evidence that it had properly given CCI notice, under the Subcontract, of any claim Levco had against Whole Foods for delay damages" are supported by legally and factually sufficient evidence. The fact that the trial court also found that Levco could established the elements of common-law fraud against Whole Foods is immaterial in light of our conclusion that such a claim is barred by the economic loss rule.[5] Accordingly, the trial court did not err in failing to award Levco damages on its fraud claim against Whole Foods.
We overrule Levco's claims on appeal.
II. Whole Foods' Issues on Appeal
At trial, Whole Foods alleged that CCI breached the Construction Contract in multiple ways, including by failing to pay subcontractors, failing to keep the Project free from liens, failing to provide necessary documentation, and refusing to indemnify Whole Foods. Whole Foods sought to enforce the Construction Contract's indemnity provisions against CCI and to invalidate CCI's lien. Whole Foods also sought to invalidate Levco's lien and to have Levco indemnify it against CCI's claims.
*638 The trial court found that Whole Foods breached the Construction Contract with CCI and awarded CCI $465,809.57 as actual damages on that claim, in addition to attorney's fees and pre- and post-judgment interest. The trial court also found that Whole Foods was not entitled to indemnification under the Construction Contract. The trial court's judgment did not award any damages to Whole Foods on any of its claims.
On appeal, Whole Foods argues that: (1) the trial court erred by concluding that it breached the Construction Contract and that CCI did not breach that agreement; (2) the trial court erred by declaring that neither CCI nor Levco had a duty to indemnify Whole Foods; (3) "CCI's claim for action on the bond fails as a matter of law"; and (4) this Court should order Levco to reimburse Whole Foods for its half of the costs incurred in obtaining the appellate record.
Whole Foods' Claims of Breach of the Construction Contract
Whole Foods argues that the trial court erred by concluding that it breached the Construction Contract while also concluding that CCI did not breach the contract. It argues that the Construction Contract required CCI to provide statutory lien waivers and releases as a condition precedent to payment by Whole Foods. Whole Foods also argues that CCI failed to satisfy multiple contractual obligations, such as failing to pay subcontractors as required, invoicing Whole Foods for Levco's work even though it did not intend to pay Levco, allowing liens to be placed on the Project and then refusing to address them, overcharging Whole Foods by failing to carve out the correct retainage amounts, and refusing to honor its obligation to indemnify Whole Foods.
A. Standard for Construing a Contract
When reviewing a contract, our goal is to determine the parties' true intentions as expressed in the instrument. Plains Exploration & Prod. Co. v. Torch Energy Advisors Inc. , 473 S.W.3d 296, 305 (Tex. 2015) ; see Coker v. Coker , 650 S.W.2d 391, 393 (Tex. 1983). "We 'construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served,' and avoiding unreasonable constructions when possible and proper." Plains Exploration & Prod. Co. , 473 S.W.3d at 305 (quoting Reilly v. Rangers Mgmt., Inc. , 727 S.W.2d 527, 530 (Tex. 1987) ). We must "consider the entire writing, harmonizing and giving effect to all the contract provisions so that none will be rendered meaningless." Id. (citing Moayedi v. Interstate 35/Chisam Rd., L.P. , 438 S.W.3d 1, 7 (Tex. 2014) ). "No single provision taken alone is given controlling effect; rather, each must be considered in the context of the instrument as a whole," and we must "give words their plain, common, or generally accepted meaning unless the contract shows that the parties used words in a technical or different sense." Id. If the contract's language can be given a definite legal meaning or interpretation, then it is not ambiguous and we will construe the contract as a matter of law. See El Paso Field Servs., L.P. v. MasTec N. Am., Inc. , 389 S.W.3d 802, 806 (Tex. 2012) (citing Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am. , 341 S.W.3d 323, 333 (Tex. 2011) ).
The elements of a breach-of-contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages as a result of breach. Bank of Tex. v. VR Elec., Inc. , 276 S.W.3d 671, 677 (Tex. App.-Houston [1st Dist.] 2008, pet. denied). "Whether a party has breached a contract is a question *639 of law for the court ... when the facts of the parties' conduct are undisputed or conclusively established." Grohman v. Kahlig , 318 S.W.3d 882, 887 (Tex. 2010) (citing Sullivan v. Barnett , 471 S.W.2d 39, 44 (Tex. 1971) ).
B. Relevant Contract Provisions
Whole Foods argues that the Construction Contract "expressly required CCI to do certain things it never did," while CCI argues that it complied with the contract and that Whole Foods was the breaching party.
Among other relevant provisions, the Construction Contract set out specific provisions governing applications for payment during the Project. It required CCI to submit to Whole Foods and its architect an itemized application for payment at the beginning of each month that indicated the percentage of completion of each portion of the work under the contract and that contained an itemization of the amount to be retained pending final completion of the project and a record of all disbursements made to subcontractors and materialmen. The Construction Contract further stated that applications for payment must include:
Conditional Lien Waiver and Release(s) for the entire amount sought in the Application for Payment, fully executed by Contractor, all Subcontractors and Sub-subcontractors of any tier and all materialmen with respect to all Work covered by the Application for Payment [and] Unconditional Lien Waiver and Release(s) fully executed by Contractor, all Subcontractors and Sub-subcontractors of any tier and all materialmen with respect to all Work for which payment was made more than five days before the date of the Application for Payment.
Furthermore, the parties agreed that "Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay." And the parties agreed that "[t]he Contractor shall pay each Subcontractor no later than seven days after receipt of payment from the Owner the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of the Subcontractor's portion of the Work."
Furthermore, regarding the processing of payment applications for work done under the Construction Contract, the agreements provided a mechanism for the Project's architect, upon receipt of a payment application, either to "issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1." Section 9.5.1 provided, in relevant part, that
The Architect or the Owner may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, [under certain circumstances]. The Architect or Owner may also withhold a Certificate for Payment, or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's or the Owner's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2 because of ... third party claims filed or reasonable evidence indicating probable filing of such claims unless *640 security acceptable to the Owner is provided by the Contractor[, or] failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment....
The Construction Contract set out specific requirements to be met before the work could be determined to be "substantially complete," and it set out provisions for moving the Project to final completion and final payment. These included the issuance by the architect of a "Certificate of Substantial Completion" that:
shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, shall include a list of items that the Contractor must complete in order for the Work to achieve Final Completion (the "Punch List"), and shall fix the time within which the Contractor shall finish all items on the list accompanying the certificate.
Regarding final completion and final payment, the contract stated:
The Project shall not be considered to have reached Final Completion, and neither final payment nor any retained percentage shall become due until:
.1 Contractor has completed all Punch-list items and a full cleaning of the Project ... [and]
.2 the Contractor submits to the Owner all of the following: (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amount withheld by Owner) have been paid or will be paid from the amounts in the Final Application for Payment otherwise satisfied, [ (2)-(4) documentation regarding insurance coverage and the consent of the surety], (5) if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner, and (6) a complete set of As-Built Drawings and Specifications for the Project.
The Construction Contract further provided,
If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner within fifteen (15) days following demand by the Owner, all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorney's fees[.]
The Construction Contract also contained a provision regarding Mechanic's and Materialmen's Liens:
Provided that Owner is in compliance with the payment provisions of this Contract, Contractor shall save and keep Owner and Owner's property free from all mechanics' and materialmen's liens and all other liens and claims arising out of the Contractor's Work hereunder. In the event any such lien or claim is filed by anyone claiming by, through or under Contractor, Contractor shall, upon request by Owner and not as a Cost of the Work, remove and discharge same or provide a bond.
Finally, the Construction Contract contained a provision regarding conditions precedent:
*641 Whenever in the Contract Documents it is provided that certain conditions, approvals or events shall occur prior to or as a condition to Owner's obligation to make payment, such conditions, approvals or events are intended to be and shall be interpreted as constituting conditions precedent to payment.
Also relevant here are some provisions of CCI's Subcontractor Agreement with Levco (and its other subcontractors). Regarding obtaining final payment, the Subcontractor Agreement provided in relevant part, "It is further specifically agreed and understood that final payment to Subcontractor by CCI is dependent, as a condition precedent, upon CCI receiving final payment, including retainage, from the Owner. It is further specifically agreed and understood that Subcontractor assumes the risk of Owner's creditworthiness and/or insolvency."
C. Relevant Findings of Fact and Conclusions of Law
Regarding the facts relevant to both CCI's and Whole Foods' claims of breach of contract, the trial court found:
Despite CCI completing the work on the Project, Whole Foods withheld the contract balance and retainage owed to CCI in the amount of $629,986.80. CCI tendered the provision of conditional lien releases and waivers for a commitment that Whole Foods would release final payment. Additionally, CCI also agreed to bond around or otherwise discharge Levco's lien on the Project with a commitment that Whole Foods would make final payment on the Project. Whole Foods, however, refused to release final payment.
The trial court further found that, although Whole Foods complained of CCI's failure to keep the Project free and clear of all liens and lien claims, "Whole Foods failed to provide competent evidence at trial regarding such liens."
Rather, the trial court found that
CCI discharged or otherwise bonded around several liens and offered to discharge all remaining liens. Despite this tender, Whole Foods refused to release final payment to CCI. Whole Foods' refusal to tender final payment despite CCI's tender of lien discharge constituted a breach on the part of Whole Foods. The evidence at trial also showed that CCI requested Whole Foods make retainage payments directly to CCI's subcontractors as the work was completed. This would have eliminated the liens on the Project, but Whole Foods refused to issue payment.
Thus, the trial court determined that Whole Foods' failure "to pay the last two payments owed to CCI, particularly the retainage payment, was the very reason liens were placed on the property" and that "the evidence at trial clearly shows that Whole Foods was already in breach of the contract with CCI by failing to pay CCI and unreasonably withholding its last two payments. As such, CCI was excused from further performance on the contract due to Whole Foods' breach."
D. Sufficiency of the Evidence Supporting the Trial Court's Finding that CCI's Performance Was Excused by Whole Foods' Material Breach
Whole Foods complains on appeal that the trial court erred in concluding that it breached the Construction Contract and that CCI did not breach. It argues, in part, that CCI breached the Construction Contract in multiple ways.
Whole Foods argues that CCI "agreed to keep the Project free from liens and claims; and in the event a lien or claim was filed, CCI agreed to discharge it or provide *642 a bond if Whole Foods so requested." It contends that CCI breached these terms by "fil[ing] a lien of its own and later fil[ing] a cross-claim against Whole Foods when Whole Foods withheld the last two payments." Whole Foods also asserts that CCI "failed to make any payments to Levco between August 2010 and June 2011, and that this precipitated claims and other problems with the Project." And it argues that "CCI similar[ly] fail[ed] to pay other subcontractors, [which] result[ed] in still more liens." Thus, Whole Foods argues that it was entitled to withhold payment of the last change order payment application and the final payment, including retainage, owed to CCI under the terms of the Construction Contract.
Contrary to Whole Foods' arguments, however, the express terms of the contract did not permit Whole Foods to withhold the final payment in the event a subcontractor, like Levco, had an unreleased lien. Regarding the final payment, the Construction Contract provided that, before the final payment or retained percentage was due, CCI was obligated to submit
an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amount withheld by Owner) have been paid or will be paid from the amounts in the Final Application for Payment otherwise satisfied, [and,] if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner[.]
This language contemplates that CCI would pay its remaining obligations to its own subcontractors out of the final payment due from Whole Foods. Whole Foods provided no evidence that the affidavit presented by CCI with its final payment application was incomplete or improper. Indeed, the evidence at trial demonstrated, and the trial court found, that CCI provided an accurate list of its remaining obligations to its subcontractors, that it provided the lien releases and waivers related to sums that had already been paid, and that the remaining liens on the Project were all related to the amounts that Whole Foods had refused to pay.
Furthermore, the Construction Contract provided a remedy in the event a subcontractor refused to furnish a release or waiver after final payment was made:
If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner within fifteen (15) days following demand by the Owner, all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorney's fees[.]
Under the plain language of this provision, Whole Foods was not entitled to withhold final payment-rather, it was obligated to make the payment, and if such payment did not result in the final release of any liens or claims, Whole Foods would then be able to seek a bond from CCI or a refund of "all money that [Whole Foods] may be compelled to pay in discharging such lien."
Whole Foods argues that the provisions governing progress payments, including those provisions governing when a progress payment may be withheld, permitted it to withhold its final payment. This argument fails for multiple reasons.
*643 First and foremost, the dispute here centers on Whole Foods' failure to make the final payments, not on progress payments. The provisions cited by Whole Foods-those governing applications for progress payments-are not applicable in the present dispute. Second, Whole Foods cannot establish any breach of the provisions governing payment applications by CCI. The Construction Contract provided that payment applications for progress payments must include "Conditional Lien Waiver and Release(s) for the entire amount sought in the Application for Payment," and that "Unconditional Lien Waiver and Release(s)" were required "with respect to all Work for which payment was made more than five days before the date of the Application for Payment." Whole Foods provided no evidence that CCI failed to provide such waivers as it performed its work under the contract and sought payment. The evidence at trial-including CCI's November 28, 2011 letter to Whole Foods-indicated that Whole Foods made no claim of breach or otherwise notified CCI of any deficiency in its progress payment applications until its November 21, 2011 letter, sent months after CCI had completed its work and Whole Foods had begun occupying the premises.
Finally, even if Whole Foods had established that CCI breached the Construction Contract with regard to its progress payment applications and subsequent payment to subcontractors, such a breach by CCI would not excuse Whole Foods from subsequent performance after continuing to accept CCI's performance. If, after a breach of a contract, the non-breaching party continues to insist on performance by the party in default, "the previous breach constitutes no excuse for nonperformance on the part of the party not in default and the contract continues in force for the benefit of both parties." Henry v. Masson , 333 S.W.3d 825, 840 (Tex. App.-Houston [1st Dist.] 2010, pet. denied) (quoting Chilton Ins. Co. v. Pate & Pate Enters. , 930 S.W.2d 877, 887 (Tex. App.-San Antonio 1996, writ denied) ). Thus, the law dictates that the non-breaching party must elect either to continue performance under the contract or to cease performing, and "[s]eeking to benefit from the contract after the breach operates as a conclusive choice depriving the non-breaching party of an excuse for his own non-performance." Id. at 840-41.
Whole Foods argues on appeal that CCI breached the terms governing applications for progress payments. However, Whole Foods treated the contract as continuing after the alleged breach by paying CCI's progress payment applications, requiring CCI to continue its work on the Project, acknowledging final completion of the Project and accepting the other closing documents, occupying the premises, and collecting its $7 million bonus for timely completion of the building under the terms of its amended lease. It is thus deprived of any excuse for subsequently terminating its own performance of its obligation to make the final payments to CCI. See id. at 840 ("If the non-breaching party treats the contract as continuing after the breach, he is deprived of any excuse for terminating his own performance.").
Whole Foods nevertheless argues that it was entitled to withhold the last two payments under the Construction Contract, "and indeed was effectively obligated to do so by statute once Levco served the Fund-trapping Notice." Whole Foods further argues that CCI "agreed not to submit payment applications until it had satisfied all conditions precedent to payment, including procurement of lien waivers and releases from its subcontractors." It asserts that *644 CCI's failure to meet this requirement-even after Whole Foods specifically demanded it-constituted a material breach of the Construction Contract by CCI.
These arguments ignore the evidence adduced at trial and the findings of the trial court. CCI provided lien waivers and releases for the majority of the liens or lien claims no later than November 2011, and it informed Whole Foods at that time that the only remaining liens on the Project were the result of Whole Foods' failure to make the final two payments owed to CCI. CCI produced a letter and other evidence that it offered to bond around the remaining liens in exchange for Whole Foods' agreement to release the final payments or to have Whole Foods release the final payments directly to the subcontractors to whom CCI owed some portion of the final payment. Whole Foods refused both offers and continued to refuse to release the final payments.
The trial court found that the only liens in place at time of trial were the result of Whole Foods' own failure to pay CCI, and, as to any other liens that Whole Foods complained of, the trial court found that "Whole Foods failed to provide competent evidence at trial regarding such liens." Whole Foods asserts that these findings by the trial court contradict the record. However, as indicated by the trial court's findings, Whole Foods does not identify any liens on the Project that were caused by CCI's breach as opposed to Whole Foods' own failure to make the final payments due under the Construction Contract.
The evidence demonstrates, consistent with the trial court's findings, that CCI's lien and cross-claim were not asserted until after Whole Foods withheld payment for the amounts due to CCI under the Construction Contract. Likewise, the evidence demonstrated that Whole Foods was able to obtain releases of all liens filed on the Project by CCI's subcontractors except for those related to Whole Foods' failure to make the final payment due under the Construction Contract. Accordingly, this argument by Whole Foods does not undermine the trial court's finding of Whole Foods' own material breach, nor does it contradict the trial court's findings that supported its legal conclusion that Whole Foods' breach excused CCI from any obligation to keep the Project lien-free.
Whole Foods' arguments that CCI breached the Construction Contract in additional ways likewise fail. Whole Foods argues that CCI erroneously "used a five-percent retainage rate in its first 12 payment applications, [which] resulted in CCI repeatedly overbilling Whole Foods and keeping the funds for itself instead of releasing it to its subcontractors" and that CCI breached the Construction Contract when it, "for more than 10 months, ... invoiced Whole Foods for Levco's work, received payment, and failed to pay a penny to Levco." As discussed above, even if the record supported these allegations of breach by CCI, Whole Foods treated the contract as continuing after these alleged breaches and thus is deprived of any excuse for subsequently terminating its own performance of releasing the final payments to CCI. See Henry , 333 S.W.3d at 840. As Whole Foods acknowledges in its brief, "CCI committed these breaches more than a year before it submitted the payment applications at issue here."
We conclude that Whole Foods failed to establish that CCI materially breached the Construction Contract. Accordingly, we conclude that the trial court's finding that Whole Foods, and not CCI, committed a material breach is supported by legally and factually sufficient evidence.
*645 E. Accuracy of Trial Court's Conclusions Regarding the Breach of Contract Claims between Whole Foods and CCI
Whole Foods argues that the trial court erred in concluding that it breached the Construction Contract and in concluding that Whole Foods, by withholding CCI's last two payments, "retroactively" excused CCI's failures to keep the Project free from liens and to provide lien waivers and releases. Whole Foods also asserts that CCI's performance under the Construction Contract "was not excused when it 'tendered' the lien releases that it was already required to provide" or "requested that Whole Foods pay retainage directly to CCI's subcontractors." However, these arguments misconstrue the trial court's findings of fact and its judgment. Based on its finding that Whole Foods materially breached the Construction Contract by withholding the final payments, the trial court concluded that any breach of the Construction Contract by CCI in subsequently failing to obtain lien releases from its remaining subcontractors or in filing its own lien on the Project was excused by Whole Foods' prior material breach. The trial court awarded damages to CCI in the amount of $465,809.57-the amount due under the final payments applications that CCI submitted under the Construction Contract.
This conclusion of the trial court was based on sound, established legal principles. Unless excused, a prior material breach of the contract by one party relieves the other contracting party of any further performance. See Mustang Pipeline Co. v. Driver Pipeline Co. , 134 S.W.3d 195, 196 (Tex. 2004) ; see also Tex. Standard Oil & Gas, L.P. v. Frankel Offshore Energy, Inc. , 394 S.W.3d 753, 779-80 (Tex. App.-Houston [14th Dist.] 2012, no pet.) (affirming take-nothing judgment based in part on jury finding that party's material breach was excused).
As discussed above, we reject Whole Foods' challenges to the legal and factual sufficiency of the trial court's findings regarding the parties' claims of breach, and we conclude that CCI met its obligations under the Construction Contract up until the point that Whole Foods breached the Construction Contract by withholding the final two payments. The evidence and the terms of the Construction Contract support the trial court's finding that Whole Foods' failure to pay constituted a material breach because the Construction Contract did not permit Whole Foods to withhold its final payment under the circumstances as established at trial. Rather, the provision governing final payment contemplated that CCI would pay its remaining obligations to its own subcontractors out of the final payment due from Whole Foods.
Thus, we conclude that the trial court correctly determined that Whole Foods, and not CCI, breached the Construction Contract and that Whole Foods was obligated to make the final payments to CCI.
Whole Foods argues, however, that "once Levco served and filed its Fund-trapping Notice in May 2011, Whole Foods was statutorily entitled-and truly, all but compelled-to withhold payment." It asserts that various provisions of the Texas Property Code, such as section 53.084, section 53.085, and section 28.003 (the Texas Prompt Payment Act), permitted it to withhold CCI's final two payments.
These arguments are unavailing. As CCI argues in its brief, Levco's "fund-trapping notice" was not valid because, among other reasons, Levco submitted it in an untimely manner, months after it had performed its work. See, e.g. , TEX. PROP. CODE ANN. § 53.056(b) (West 2014) (providing, among other things, that any notice *646 must be submitted no later than 15th day of third month after claimant's labor or materials were furnished). Even if the notice had been timely, Levco's claims against Whole Foods were not for funds that it alleged were wrongfully withheld by CCI, but rather damages allegedly owed to Levco by Whole Foods for Whole Foods' own failures and delays relevant to Levco's work on the Project. And the trial court ultimately determined that Levco was not entitled to any recovery on the claims associated with that notice.
Whole Foods' argument pursuant to the Prompt Payment Act likewise fails, as Whole Foods failed to establish the existence of a "good faith dispute." See id. § 28.003(b) (West 2014) (creating exception to statutory requirement for prompt payment "[i]f a good faith dispute exists concerning the amount owed for a payment requested or required by this chapter under a contract for construction of ... real property"). Whole Foods argues that "the Trial Court applied different standards to Whole Foods' dispute with CCI and CCI's dispute with Levco." But this argument fails to account for the different facts and contract provisions involved. Relevant to this appeal, neither Levco nor CCI asserted any claims under the Prompt Payment Act. However, the trial court determined that Whole Foods wrongfully withheld final payment from CCI in breach of the Construction Contract. Whole Foods has not cited any authority indicating that its own conduct in breaching the Construction Contract could constitute a "good faith dispute" justifying its withholding payment of amounts due to CCI under the contract.
Finally, Whole Foods argues that it was entitled "to require an all-bills-paid affidavit 'as a condition of payment.' " See id. § 53.085(a) (West 2014) (requiring person furnishing labor or materials for construction of improvements to real property to provide "if requested and as a condition of payment" affidavit stating that it had paid all subcontractors, laborers, and materialmen or identifying parties and specific amounts still owed). However, as we have already discussed, the trial court determined that CCI made an adequate tender of performance. Whole Foods provided no evidence that the affidavit presented by CCI with its final payment application was incomplete or improper, and the trial court found that CCI provided an accurate list of its remaining obligations to its subcontractors and that it provided the lien releases and waivers related to sums that had already been paid. The evidence further established that CCI offered to bond around the remaining liens in exchange for Whole Foods' agreement to release the final payment or for Whole Foods to release the final payment directly to CCI's subcontractors. Whole Foods has not cited any authority indicating that Property Code section 53.085(a) could apply under these circumstances to justify Whole Foods' own breach of the Construction Contract.
We overrule Whole Foods' legal issues complaining of the trial court's judgment as it relates to the breach of contract claims between Whole Foods and CCI.[6]
*647 Whole Foods' Indemnification Claims
Whole Foods also argues that the trial court erred in concluding that neither CCI nor Levco was required to indemnify it. Specifically, Whole Foods argues that CCI breached the Construction Contract "in multiple ways, several months before any alleged breach by Whole Foods could have possibly occurred"; that the indemnity provision is triggered not just by CCI's own breach, but by a breach committed by any of its subcontractors; and that Property Code section 53.153 also requires CCI to indemnify Whole Foods in any suit brought by another party who has filed a mechanic's lien.
A. Relevant Contract Provisions
The indemnification provision in the Construction Contract provided in relevant part:
To the fullest extent permitted by law [CCI] shall defend, indemnify and hold harmless [Whole Foods], its officers, directors, shareholders, and employees, and any person or entity having an ownership or possessory interest in any portion of the property or improvements comprising the project site (including, without limitation, lessors or tenants), and each of their officers, directors, shareholders, and employees (collectively, the "Indemnified Parties") from and against any and all suits, claims, causes of action, costs, demands, losses, damages, injuries and liabilities ... which the Indemnified Parties may suffer or sustain or become liable for arising out of or related to the performance of the work or [CCI's] other obligations under this agreement, but only in proportion to and to the extent such indemnified claims are directly or indirectly caused, occasioned or contributed to, in whole or in part, or claimed to be caused, occasioned or contributed to, in whole or in part, by (1) the negligent act or omission of [CCI] or [its] officers, partners, employees, agents, subcontractors (of any tier), or anyone acting under their direction, control or on their behalf (collectively "Indemnitor"); (2) the breach by Indemnitor of any of the provisions of this agreement; or (3) willful misconduct by Indemnitor. The indemnification and defense obligations under this section shall arise regardless of any assertion or finding that any Indemnified Party is liable by reason of non-delegable duty, or any assertion or finding that any Indemnified Party is liable for joint, concurring, or contributory negligence or breach of contract or violation of law.
B. Relevant Findings of Fact and Conclusions of Law
The trial court found that "Whole Foods admitted, through the testimony of its corporate representative, Gary Flinn, that Whole Foods does not contend" that CCI engaged in any willful misconduct. Accordingly, the trial court considered whether Whole Foods established that CCI committed any act of negligence or breach of the contract and whether any such act or breach was the cause of Levco's suit against Whole Foods. The trial court found, "The testimony adduced at trial from Whole Foods fails to evidence any act or omission on the part of CCI that sounds in tort and stems from a duty CCI allegedly owed outside the terms of CCI's contractual relationship with any of the parties in this dispute."
The trial court further found that Levco's claims against Whole Foods were predicated on Whole Foods' allegedly false representations that the plans and drawings submitted for bid were accurate and construction-ready and on delays caused by the faulty plans and were not related to the subcontractor relationship between *648 Levco and CCI. The trial court found, "No evidence at trial has shown that CCI was a source of delays on the project whether it be related to insufficient or inaccurate plans or unreasonable delays caused by Whole Foods' failure to obtain permits. The source of these delays was Whole Foods, and Whole Foods has admitted as much." It concluded, "Since Whole Foods cannot demonstrate any negligent act or omission on the part of CCI being the cause of Levco's claims against Whole Foods, Whole Foods cannot demonstrate that the [Construction Contract's] indemnification clause has been triggered."
The trial court also found that "Whole Foods is unable to provide any evidence demonstrating any breach of the [Construction Contract] on the part of CCI was the cause of Levco's claims against Whole Foods." Specifically, the trial court found that Whole Foods "provided no evidence to demonstrate that CCI breached the Contract by violating the provisions of the Texas Prompt Pay Act." It further found that "CCI has a valid and affirmative defense under the Prompt Pay Act that there was a genuine dispute with Levco as to whether payment was owed" and that "CCI was entitled to withhold funds from Levco and, as such, CCI was not in violation of the Prompt Pay Act, [so] Whole Foods cannot rely on this issue to show breach of the Contract or rely on it to obtain defense and indemnification." The trial court likewise found no evidence that CCI "improperly failed to pay its subcontractors, including Levco, and that the alleged failure constituted breach of the [Construction Contract]." And the trial court found that Whole Foods produced no evidence at trial to demonstrate that CCI failed to supervise or direct the work on the Project adequately or that CCI failed to achieve proper coordination using its best skill and attention.
The trial court found that although Whole Foods alleged that CCI failed to keep the Project free and clear of liens and lien claims, it "failed to provide competent evidence at trial regarding such liens." The trial court stated, "[T]he evidence at trial clearly shows that Whole Foods was already in breach of the contract with CCI by failing to pay CCI and unreasonably withholding its last two payment applications. As such, CCI was excused from further performance on the contract due to Whole Foods' breach." And the trial court found that Whole Foods' "failure to pay the last two payments owed to CCI, particularly the retainage payment, was the very reason liens were placed on the property."
C. None of the Claims Arose out of CCI's Negligence or Breach of the Contract
We construe indemnity agreements under normal rules of contract construction. Gulf Ins. Co. v. Burns Motors, Inc. , 22 S.W.3d 417, 423 (Tex. 2000). As a general rule, indemnity agreements are strictly construed in favor of the indemnitors. Webb v. Lawson-Avila Constr., Inc. , 911 S.W.2d 457, 461 (Tex. App.-San Antonio 1995, writ dism'd) (citing Safeco Ins. Co. of Am. v. Gaubert , 829 S.W.2d 274, 281 (Tex. App.-Dallas 1992, writ denied) ).
Whole Foods argues that it was entitled to indemnification from CCI because of the claims filed by it and Levco. The contract provided that CCI owed indemnity
only in proportion to and to the extent such indemnified claims are directly or indirectly caused, occasioned or contributed to, in whole or in part, ... by (1) the negligent act or omission of [CCI] or [its] officers, partners, employees, agents, subcontractors (of any tier), or anyone acting under their direction, control or on their behalf (collectively "Indemnitor");
*649 (2) the breach by Indemnitor of any of the provisions of this agreement; or (3) willful misconduct by Indemnitor.
Whole Foods argues that this provision also applies to Levco, as Levco "agreed to be bound by the same indemnity language to which CCI agreed" and that the "indemnity obligations apply to Levco for the same reasons they apply to CCI."
However, Whole Foods has failed to prove any conduct by either CCI or Levco triggering the contractual indemnity provision. Whole Foods does not allege willful misconduct by either CCI or Levco. Regarding breach of the Construction Contract by either CCI or Levco, we have already examined the trial court's findings that Whole Foods, and not CCI, breached the Construction Contract, and we have concluded that those findings are supported by legally and factually sufficient evidence. Finally, Whole Foods points to no negligent act by either CCI or Levco that gave rise to those parties' claims. Rather, the evidence supports the trial court's findings that Whole Foods alone was the cause of the problems that gave rise to CCI's and Levco's claims here. Because it was Whole Foods' own failures and breach of the Construction Contract that caused the disputes at issue in this case, it cannot establish that it is entitled to indemnity from either CCI or Levco.
Whole Foods argues that it is entitled to indemnification under the terms of the Construction Contract "regardless of any assertion or finding that any Indemnified Party is liable by reason of non-delegable duty, or any assertion or finding that any Indemnified Party is liable for joint, concurring, or contributory negligence or breach of contract or violation of law." However, this language does not relieve Whole Foods of the need to prove some act of negligence or breach by CCI or another contractually defined Indemnitor. Whole Foods was not found to have joint, concurrent, or contributory liability in connection with some act of negligence or breach by CCI or Levco. Neither CCI nor Levco was found to have been negligent or to have breached-Whole Foods was solely to blame for its own losses.
Thus, we agree with the trial court that Whole Foods failed to establish its right to indemnity under the Construction Contract.
We overrule Whole Foods' appellate issues as they relate to the trial court's judgment denying it indemnity from either CCI or Levco.[7]
Conclusion
We affirm the judgment of the trial court.

The details of these provisions are set out more fully in the analysis of Whole Foods' breach of contract claims below.

This amount represents the original contract amount of $711,514.00, plus $104,903.26 in net increase to the total amount based on the submitted change orders, and a deduction of $626,166.49 for payments made to Levco and Insurors or Levco's subcontractors.

Insurors is not a party to this appeal.

At various points in the litigation, Levco asserted other claims against Whole Foods and CCI. However, Levco's complaints on appeal address only its allegation of fraud against Whole Foods, and we limit our analysis accordingly.

Whole Foods challenged the sufficiency of the evidence supporting the trial court's finding that Whole Foods committed common-law fraud. Because we conclude that Levco's fraud claim is barred by its contractual relationships with CCI and Whole Foods, we need not address this complaint. See Tex. R. App. P. 47.1.

Whole Foods argues on appeal that "CCI's claim for action on the bond fails as a matter of law." The trial court found that the action on the bond afforded CCI the same relief as its breach of contract claim, and, accordingly, it did not address this claim in its final judgment. Because we have already concluded that the award in the final judgment is properly supported by CCI's breach of contract claim, and Whole Foods' argument on this issue does not preclude such a recovery, we need not address this argument by Whole Foods. See Tex. R. App. P. 47.1.

Whole Foods also argues that this Court should order Levco to reimburse Whole Foods for its half of the costs Whole Foods incurred in obtaining the appellate record. However, regardless of Levco's claims on appeal, Whole Foods needed the records it obtained in order to pursue its own appeal. Generally, the judgment of this Court should award to the prevailing party the costs it incurred related to the appeal, including appellate filing fees and costs for preparation of the record. See Tex. R. App. P. 43.4. Thus, our judgment in this case awards CCI its court costs jointly and severally against Whole Foods and Levco. Although we "may tax costs otherwise as required by law or for good cause," Whole Foods has failed to demonstrate any reason for this Court to so exercise its discretion and award costs to a losing party on appeal. See ids="9972814" index="51" url="https://cite.case.law/sw2d/829/274/#p281">id.